# IN THE UNITED STATES DISTRICT C O U R T
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

LINDA KENZIK, individually and on
behalf of others similarly situated,

2:15-cv-00201-DCN

Plaintiff,

v.

**CLASS ACTION**

KILEY & KILEY, L.L.C., a Michigan Limited
Liability Company and John Does 1-10

Defendants

_____/

## COMPLAINT

1.     Plaintiff, LINDA KENZIK ("Kenzik"), brings this action against Defendants, KILEY & KILEY, L.L.C. and JOHN DOES 1-10, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2.     Specifically, Kenzik brings claims against Defendants pursuant to 47 U.S.C. § 227(b), for causing unsolicited calls to be made to Kenzik's residential line and the cellular phones of the other members of the Class using an automatic telephone dialing system and/or artificial or prerecorded voice.

3.     Kenzik also brings claims on behalf of herself and others for violations of the TCPA's company-specific (hereafter Defendant specific DNC) and National Do Not Call Registry do-not-call prohibitions. 47 C.F.R. § 64.1200 (c)(2); 47 C.F.R. § 64.1200(d)(3); 47 U.S.C. § 227(c)(5).

## JURISDICTION AND VENUE

4.    The court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 747 (2012). The Court further has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that section apply to this action.

5.    This Court has personal jurisdiction over Defendants and venue is proper because: (1) Defendants do business in this District, and (2) a substantial part of the events giving raise to Kenzik's claims occurred here, including the unwanted calls that Defendants caused to be made to Kenzik's residential telephone line using an automatic telephone dialing system and/or pre-recorded voice.

## PARTIES

6.    Plaintiff, LINDA KENZIK, is a natural person and resident of Mt. Pleasant, South Carolina.  At all relevant times, Kenzik owned and continues to own the telephone line to which Defendants' prerecorded calls were made.  At all relevant times Kenzik's telephone line was included in the National Do Not Call Registry.

7.    On information and belief, Defendant, KILEY & KILEY, L.L.C., ("Kiley & Kiley"), is a Michigan Limited Liability Company with its principal place of business at 12214 Bowers #2215, Birmingham, MI 48012. Kiley & Kiley provides and markets services to lower interest rates on credit card debt and more favorable payment terms.

8.    John Does 1-10 are not presently known, but may be identified through discovery.

## FACTS

9.    Defendant, Kiley & Kiley, is a credit card processing company that provides and markets services to lower interest rates on credit card debt and more favorable payment terms.

10.    Within four years prior to the filing of this action, Defendants—whether directly, through affiliate marketers, or otherwise—used equipment to dial the residential and cellular telephone numbers of potential customers, including Kenzik.  On information and belief, the dialing equipment used had the capacity to dial numbers without human intervention.

11.    Many if not all of these calls also utilized artificial and/or prerecorded voice messages to market Kiley & Kiley's services to lower interest rates on credit card debt and more favorable payment terms.

12.    Unfortunately, many of the people whose residential and cell phones were called as a result of Defendants' telemarketing practices never actually consented to receive such calls, and many numbers were also called despite direct requests to stop and/or registration with the National Do Not Call Registry.

13.    These are unsolicited "cold calls" made for the purpose of generating leads for sales of Defendants' products and/or services.  On information and belief, many of the individuals targeted by Kiley & Kiley and its lead generators were called more than once.

14.     Kenzik received multiple prerecorded message calls from Kiley & Kiley and Kiley & Kiley failed to honor the National Do Not Call Registry or even direct requests that the calls stop.

## THE LEGAL BASIS OF THE CLAIMS

15.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy . . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (Jan. 18, 2012).

16.    Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

17.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

18.    In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a Robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b).

19.     In May of 2013, the FCC reinforced this issue. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* n.107.

20.     The 2013 FCC Order further explained:

> To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

> [ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think

that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.

*Id.* at ¶¶ 46-47).

### *The TCPA prohibits telemarketing calls to persons and entities whose numbers are listed on the Do Not Call Registry, unless the caller has the recipient's written consent*

21.     In 1995, under its authority to adopt rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, the FTC adopted the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, which was later amended in 2003.  Among other things, the amended TSR established the national Do Not Call Registry, a federally-maintained listing of persons who do not wish to receive telephone solicitations.  See 47 C.F.R. § 64.1200(c)(2).   A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

22.     The TCPA and its implementing regulations prohibit persons and entities from initiating telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).  A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. § 227(c)(5).

23.     The regulations contain a safe harbor provision that exempts from liability a person or entity making telephone solicitations who has obtained the subscriber's prior express invitation or permission to make the call.  47 C.F.R. § 64.1200(c)(2)(ii).

24.     The required prior express invitation or permission must be evidenced by a signed, written agreement between the consumer and seller that states the consumer agrees to be contacted by this seller, and includes the telephone number to which the calls may be places. *Id.* *§ 64.1200(c)(2)(ii).*

### The TCPA bans all autodialer calls placed to cell phones

25.     The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones.

26.     The TCPA categorically bans persons and entities from initiating a telephone call using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service.  See 47 C.F.R. § 64.1200(a)(1)(iii); see also 47 U.S.C. § 227(b)(1).

### FACTS RELATING TO PLAINTIFF

27.     Starting on or about June 3, 2014, and likely even earlier, Kenzik received calls to her residential telephone line—sometimes multiple times a day—using prerecorded voice messages to advertising its free credit card processing services.

28.     These calls came from various numbers, including but not limited to (843) 388-9429 and (406) 388-9429.

29.    Upon information and belief, this statement is true: The calls were made by Kiley & Kiley in order to promote its goods and services. Alternatively, the calls were made on behalf of Kiley & Kiley.

30.    As evidenced by, among other things, the large volume of calls and their use of prerecorded voice messages, many if not all of these calls from or on behalf of Defendants were made using an automatic telephone dialing system, equipment having the capacity to dial Kenzik's number without human intervention. On information and belief, no human being pressed the digits of Kenzik's residential telephone number into a phone to make any call to Kenzik. On further information and belief, at least some of Kiley & Kiley's lead generation telemarketing calls were made using an automatic telephone dialing system service.

31.    Kenzik received calls on at least the following dates: June 3, 2014 June 4, 2014, June 18, 2014, June 23, 2014, June 25, 2014, June 26, 2014, June 30, 2014, July 1, 2014, July 14, 2014, July 16, 2014, July 17, 2014, July 22, 2014, July 29, 2014, Aug 1, 2014, Aug 4, 2014, Aug 5, 2014, Aug 6, 2014, Aug 8, 2014, Aug 9, 2014, Aug 11, 2014, Aug 12, 2014, Aug 13, 2014, Aug 14, 2014, Aug 15, 2014, and Aug 18, 2014. Discovery from Defendants or third parties that work with Defendants to promote their goods and services will almost certainly show that there were more calls.

32.    Kenzik has never given Defendants permission to contact her residential telephone line, whether through the use of an automatic telephone dialing system, prerecorded or artificial voice, or otherwise. At all relevant times Kenzik's number was registered with the National Do-Not-Call Registry.

33.    On or about June 3, 2014, and at least twice after that date, Kenzik demanded that calls cease.

34.    At all times relevant, Kenzik's residential phone line was also called after being registered with the National Do Not Call Registry.

35.    Kenzik was damaged by Defendants' calls.  Her privacy was wrongfully invaded, and Kenzik has become understandably aggravated with having to deal with the frustration of repeated, unwanted phone calls forcing her to divert attention away from her work and other activities, especially given Defendants' complete disregard of her requests to cease and the registration of her number with the National Do Not Call Registry.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227 (b)**
**(On Behalf of Plaintiff and the Section 227 (b) Class)**

36.    Kenzik realleges and incorporates the foregoing allegations as if fully set forth herein. Kenzik brings this Count I on behalf of herself and the Class defined below, only.

37.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

38.    "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention."  See, e.g., Hicks v. Client Servs., Inc., No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (quoting In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991: Request of ACA Int'l for Clarification and Declaratory Ruling, 23 FCC Rcd 559, 566 (2007).

39.    Defendants used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the residential telephone of Kenzik and

the residential and/or cellular telephones of the other members of the putative Class defined below. Many of these calls, including calls to Kenzik, utilized prerecorded voice messages.

40.    These calls were made without regard to whether or not Defendants had first obtained the express consent of the called party to make such calls. In fact, Defendants did not have prior express permission or invitation to call the residential phone line of Plaintiff and the residential or cellular phone lines of other members of the putative Class when their calls were made.

41.    As such, Defendants' call were willful or, at a minimum, negligent. *See 47* U.S.C. § 312(f)(1).

42.    Defendants have, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system and/or artificial or prerecorded voice to make non-emergency telephone calls to the residential phone line of Kenzik and the residential or cellular phone lines of the other members of the putative Class without their prior express permission or invitation.

43.    As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Kenzik and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Kenzik and the Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

44.    Because Defendants knew or should have known that Kenzik and the other members of the putative Class had not given prior express permission or invitation to receive their autodialed and prerecorded voice calls to their residential or cellular telephones—and/or willfully used an automatic telephone dialing system and/or prerecorded voice to call the residential phone lines of Kenzik and the residential or cellular phone lines of other members of the Class without prior express permission or invitation—the Court should treble the amount of

statutory damages available to Kenzik and the other members of the putative Class pursuant to

Section 227(b)(3) of the TCPA.

**Class Allegations**

45.    Plaintiff brings this case on behalf of a class (the "Section 227(b) Class") defined

as follows:

> All persons in the United States who, within four years prior to the filing
> of this action, Defendants or some person on Defendants' behalf called
> on their residential or cell phone line, using an artificial or prerecorded
> voice or device with the capacity to dial numbers without human
> intervention, where Defendants' did not have prior express permission
> or invitation from the recipient to make such call.

46.    Upon information and belief, Defendants called more than 100 phone numbers in

the four years prior to the filing of this action utilizing a device with the capacity to dial numbers

without human intervention or a message that had been recorded ahead of time, where

Defendants did not have prior express permission for such call.

47.    Common question of law or fact exist as to all members of the putative Class and

predominate over any questions solely affecting any individual member, including Kenzik.  Such

questions common to the Section 227(b) Class include but are not limited to:

> A.  Whether Defendants used an "automatic telephone dialing system" or "artificial
>
>     or prerecorded voice" as such terms are defined or understood under the TCPA
>
>     and applicable FCC regulations and orders;
>
> B.  Whether Defendants had prior express permission or invitation to contact Kenzik
>
>     and the other members of the putative Class when it made calls to their residential
>
>     or cell phone lines using an automatic telephone dialing system and/or artificial or
>
>     prerecorded voice; and

C.   Damages, including whether Defendants' violations were performed willfully or

knowingly such that Kenzik and the members of the putative Class are entitled to

trebled damages.

48.     Kenzik's claims are typical of the claims of the other members of the putative

Class.  The factual and legal bases of Defendants' liability to Kenzik and the other members of

the putative Class are the same: Defendants violated the TCPA by causing the residential and

cellular telephone number of each member of the putative Class, including Kenzik, to be called

using an automatic telephone dialing system and/or artificial or prerecorded voice without prior

express permission or invitation.

49.     Kenzik will fairly and adequately protect the interests of the Class.  Kenzik has no

interests that might conflict with the interests of the Class.  Kenzik is interested in pursuing her

claims vigorously, and she has retained counsel competent and experienced in class and complex

litigation, including with regards to the claims alleged herein.

50.     Class action treatment is superior to the alternatives for the fair and efficient

adjudication of the controversy alleged herein.  Such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual action

would entail.  There are, on information and belief, thousands of members of the putative Class,

such that joinder of all members is impracticable.

51.     No difficulties are likely to be encountered in the management of this class action

that would preclude its maintenance as a class action, and no superior alternative exists for the

fair and efficient adjudication of this controversy.

52.    Defendants have acted and failed to act on grounds generally applicable to Kenzik and the other members of the putative Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the putative Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

53.    The identity of the putative Class is, on information and belief, readily identifiable from the records of Defendants and/or any affiliated marketers.

WHEREFORE, Plaintiff, LINDA KENZIK, on behalf of herself and all others similarly situated, demands judgment in her favor and against Defendants, KILEY & KILEY, L.L.C. and JOHN DOES 1-10, jointly and severally, as follows:

A.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Kenzik as the representative of the class, and appoint Kenzik's counsel as counsel for the class;

B.  That the Court Award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

C.  That the Court enjoin the Defendants from additional violations; and

D.  That the Court award pre-judgment interest, costs and such further relief as the Court may deem just and proper.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Defendant - Specific DNC Class)**

54. Kenzik realleges and incorporates the foregoing allegations as if fully set forth herein. This Count II is brought on behalf of Kenzik and the Defendant-Specific DNC Class defined below, only.

55. It is a violation of the TCPA to make a telephone solicitation to any person that has asked not to receive such calls. 47 C.F.R. § 64.1200(d)(3).

56. Telemarketers like Kiley & Kiley must honor a do-not-call request immediately. In its July 3, 2003, Final Order implementing 47 C.F.R. § 64.1200(d)(3), the FCC explained:

> We note that the Commission's rules require that entities must record company- specific do-not-call requests and place the subscriber's telephone number on the do-not-call list at the time the request is made.
>
> Therefore, telemarketers with the capability to honor such company-specific do- not-call requests in less than thirty days must do so. We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interests of the telemarketing industry.
>
> Consumers expect their requests not to be called to be honored in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to process that request.

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14069-14070 (2003).

57. Kiley & Kiley claims to be a technologically savvy company. Upon information and belief, that claim is true: Kiley & Kiley had the capacity to cease calling immediately upon demand, but instead made at least two additional calls to Plaintiff and each of the Defendant-Specific DNC Class members in spite of this.

58. In any event, at least two of Kiley & Kiley's calls to Kenzik and the Defendant-Specific DNC Class were made after a reasonable time had elapsed from the time of the demand to stop.

59.     A private right of action is available for consumers who have received more than one call within a twelve-month period, in violation of FCC regulations like 47 C.F.R. § 64.1200(d)(3).  47 U.S.C. § 227(c)(5).

60.     As a result of Defendants' conduct and pursuant to Section 227(c)(5) of the TCPA, Kenzik and the other members of the putative Defendant-Specific DNC Class were harmed and are each entitled to up to $500.00 in damages for each violation, which amount may be trebled if the violations are proven to have been willful or knowing. Kenzik and the Defendant-Specific DNC Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

### Class Allegations

61.     Kenzik brings this Count on behalf of a class (the "Defendant-Specific DNC Class") defined as follows:

> All persons in the United States who, within four years prior to the filing of this action, ongoing, Defendants or some person on Defendants' behalf called at least twice in any twelve month period in order to promote Kiley & Kiley goods and/or services, where both calls were made outside a reasonable time after a request that calls to the phone number stop.

62.     Upon information and belief, Defendants called more than 40 phone numbers at least twice each in the four years prior to the filing of this action, where the recipient of such call had previously demanded that further calls promoting Defendants' goods and/or services cease.

63.     Common questions of law or fact exist as to all members of the putative Defendant-Specific DNC Class and predominate over any questions solely affecting any individual member, including Kenzik. Such questions common to the Defendant-Specific DNC Class include but are not limited to:

    A.  Whether Defendants had a duty to cease calling immediately once it received a request for cessation, or alternatively, whether the time within which it ceased calling was reasonable; and

    B.  Damages, including whether Defendants' violations were performed willfully or knowingly such that Kenzik and the members of the putative Defendant-Specific DNC Class are entitled to trebled damages.

64.    Kenzik's claims are typical of the claims of the other members of the putative Company-Specific DNC Class. The factual and legal bases of Defendants' liability to Kenzik and the other members of the putative Defendant-Specific DNC Class are the same: Defendants violated the TCPA by causing telemarketing calls to be made to persons after they had requested not to be called.

65.    Kenzik will fairly and adequately protect the interests of the Defendant-Specific DNC Class. Plaintiff has no interest that might conflict with the interests of the Defendant-Specific DNC Class. Kenzik is interested in pursuing these claims vigorously, and she has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

66.    Class Action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the putative Defendant-Specific DNC Class, such that joinder of all members is impracticable.

16

67.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

68.    Defendants have acted and failed to act on grounds generally applicable to Kenzik and the other members of the Defendant-Specific DNC Class, thereby making relief appropriate with respect to the Defendant-Specific DNC Class as a whole. Prosecution of separate actions by individual members of the putative Defendant-Specific DNC Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Defendant-Specific DNC Class that would establish incompatible standards of conduct.

69.    The Identity of the Defendant-Specific DNC Class should be readily identifiable from the records of Defendants and/or any marketers that made calls on their behalf.  If it is not, this may constitute a separate violation of the TCPA.

WHEREFORE, Plaintiff, LINDA KENZIK, individually and on behalf of all other similarly situated members of the Defendant-Specific DNC Class, demands judgment in her favor and against Defendants, KILEY & KILEY, L.L.C. and JOHN DOES 1-10, jointly and severally, as follows:

A.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Kenzik as the representative of the class, and appoint Kenzik's counsel as counsel for the class;

B.  That the Court Award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for  each violation, whichever is greater;

C.  That the Court enjoin the Defendants from additional violations; and

D.  That the Court award pre-judgment interest, costs and such further relief as the

Court may deem just and proper.

## COUNT III
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Registry Class)

70.     Kenzik realleges and incorporates the foregoing allegations as if fully set forth

herein.  This Count III is brought against Defendants on behalf of Kenzik and the National DNC

Registry Class defined below.

71.     The TCPA provides that "[n]o person or entity shall initiate any telephone

solicitation to … [a] residential telephone subscriber who has registered his or her telephone

number on the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the Federal Government."  47 C.F.R. § 64.1200(c)(2); 47

C.F.R. § 64.1200©(2);47 U.S.C. § 227 (c).

72.     Defendants or some party on their behalf initiated more than one telephone

solicitation in a 12-month period to each of the telephone numbers of Kenzik and the other

members of the National DNC Registry Class, despite the fact that Kenzik and the other

members of the National DNC Registry Class had all registered their numbers on the National

Do Not Call Registry of persons who do not wish to receive telephone solicitations.

73.     Defendants have, therefore, violated Section 227 (c) of the TCPA. See 47 C.F.R.

§ 64.1200(c)(2).

74.     The TCPA entitles anyone who has received more than one telephone call within

any 12-month period by or on behalf of the same entity in violation of, among other things, 47

C.F.R. § 64.1200(c)(2) and its prohibition against calling telephone numbers registered on the

National Do Not Call Registry, to injunctive relief and the greater of either actual damages or up

to $500 per violation. 47 U.S.C. § 227(c)(5). This amount can be trebled where the Defendants "willfully or knowingly" violated the statute.  *Id.*

75.     On information and belief, because Kenzik has received multiple calls from or on behalf of Defendants despite having registered with the National Do Not Call Registry, Defendants willfully and/or knowingly violated the TCPA, such that treble damages are warranted.  47 U.S.C. § 227(c)(5).

## **Class Action Allegations**

76.     Kenzik brings this Count on behalf of a class (the "National DNC Registry Class") defined as follows:

> All person in the United States to whose telephone number Defendants or some person on Defendants' behalf initiated more than one call in any 12-month period within the four years prior to the filing of this action, where (1) the telephone number was registered on the National Do Not Call Registry, (2) the calls were made for the purpose of promoting Defendants' goods and/or services, and (3) Defendants' records do not contain a signed, written agreement with the person stating that the person agrees to be contacted at such number.

77.     Upon information and belief, Defendants caused more than 100 telephone numbers to each be called more than once within any 12-month period in the four years prior to the filing of this action for the purpose of promoting Defendants' goods and/or services, despite such numbers being registered on the National Do Not Call Registry and the lack of express, written permission for such calls.

78.     Common questions of law or fact exist as to all members of the putative National DNC Registry Class and predominate over any questions solely affecting any individual member, including Kenzik. Such questions common to the National DNC Registry Class include but are not limited to:

     A.  Whether the telemarketing calls initiated by or on behalf of Defendants to the telephone numbers of Kenzik and the other members of the National DNC Registry Class violated the TCPA, where such numbers were registered with the National Do Not Call Registry; and

     B.  Damages, including whether Defendants' violations were performed willfully or knowingly such that Kenzik and the other members of the National DNC Registry Class are entitled to trebled damages.

79.    Kenzik s claims are typical of the claims of the other members of the putative Class.  The factual and legal bases of Defendants' liability to Kenzik and the other members of the National DNC Registry Class are the same: Defendants violated the TCPA by initiating calls to the telephone numbers of each member of the putative Class, including Kenzik, despite the fact that such persons had registered their numbers on the National Do Not Call Registry of persons who do not wish to receive telephone solicitations.

80.    Kenzik will fairly and adequately protect the interests of the putative Class. Kenzik has no interests that might conflict with the interests of the Class.  Kenzik is interested in pursuing her claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

81.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail.  There are, on information and belief, thousands of members of the Class, such that joinder of all members is impracticable.

82. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

83. Defendants have acted and failed to act on grounds generally applicable to Kenzik and the other members of the Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

84. The identity of the Class is, on information and belief, readily identifiable from the records of Defendants and/or any parties that made calls on their behalf.

WHEREFORE, Plaintiff, LINDA KENZIK, individually and on behalf of all other similarly situated members of the National DNC Registry Class, demands judgment in her favor and against Defendants, KILEY & KILEY, L.L.C. and JOHN DOES 1-10, jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Kenzik as the representative of the class, and appoint Kenzik's counsel as counsel for the class;

B. That the Court Award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

C. That the Court enjoin the Defendants from additional violations; and

D. That the Court award pre-judgment interest, costs and such further relief as the Court may deem just and proper.

Respectfully submitted:

LINDA KENZIK, individually and on behalf of all others similarly situated


s/John G. Felder, Jr.
John G. Felder, Jr.
McGOWAN, HOOD & FELDER
1517 Hampton St.
Columbia, SC   29201
Telephone:  803-779-0100
Facsimile:  803-256-0702
jfelder@mcgowanhood.com

And:

Brian J. Wanca (*pro hac vice to be submitted)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Facsimile:  847-368-1501
bwanca@andersonwanca.com